In re HALLE. See Case No. 5,960.

---

## Case No. 5,957.

### HALLER v. BEALL.

[2 Cranch, C. C. 227.] [1]

Circuit Court, District of Columbia. April Term, 1821.

REPLEVIN—PRACTICE—SURETY—MOTION TO QUASH WRIT AFTER ISSUE JOINED.

1. After issue joined in replevin, it is too late to move to quash the writ.

2. Semble, that the act of Maryland which requires two sureties in replevin bonds is directory only, and that the writ is not void, if there be only one surety.

Mr. Marbury, for defendant, after issue joined, and the jury was about to be sworn, moved the court to quash the writ of replevin, because the clerk had taken the bond with one surety only. The statute of 11 Geo. II. c. 19, § 23, requires two sureties in all cases of replevin of goods distrained for rent; and the act of Maryland of 1790, c. 53, § 12, provides that "before any clerk shall issue a writ of replevin in virtue of this act, the plaintiff or plaintiffs shall enter into bond, with two sufficient sureties, in double the value of the property, to be replevied in the same manner as in other cases of replevin." And such has always been the practice in the courts of Maryland, as well as in this court.

THE COURT said it was now too late to move to quash the writ; and that they were inclined to think that the statute of Maryland was directory only, and that the writ was not void merely on that account. See the case of Orr v. Ingle [Case No. 10,588].

---

HALLET (ALLEN v.). See Case No. 223.

---

## Case No. 5,958.

### HALLET et al. v. PHOENIX INS. CO.

[2 Wash. C. C. 279.] [2]

Circuit Court, D. Pennsylvania. Oct. Term, 1808.

ADMIRALTY — VESSEL NOT HEARD FROM — WHEN PRESUMED TO BE LOST—INTEREST—EVIDENCE OF CUSTOM.

It is a uniform rule, in estimating the loss upon a vessel which has never been heard of, and is therefore considered as lost, to calculate interest after twelve months and thirty days from the last period when the vessel was heard from.

[Appeal from the district court of the United States for the district of Pennsylvania.]

Vessel lost, and never since heard of, on a

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters. Jr., Esq.]

voyage from Curacoa. The question submitted to the court was, from what time interest is to run, and the vessel to be considered as lost? A witness was examined, to prove that it is the uniform and undeviating rule in all cases, even of coasting vessels, to calculate interest twelve months and thirty days from the last time she is heard from. No instance of a case to the contrary was shown, and it was stated to be the custom as to all the offices.

BY THE COURT. Upon this evidence of a uniform usage upon this subject, we shall consider ourselves bound by it, and in this fix the interest to run from twelve months and thirty days, from the last period when the vessel was heard from.

---

HALLETT (BARBER v.). See Case No. 970.

HALLETT (OH CHOW v.). See Case No. 10,-469.

---

## Case No. 5,959.

### HALLETT et al. v. SMYTHE.

[5 Int. Rev. Rec. 69.]

Circuit Court, S. D. New York. 1867.

CUSTOMS DUTIES—CLASSIFICATION—GAMBIA.

Gambia is exempt from duty under the tariff act of 1861 [(12 Stat. 292), under the name of "terra japonica," the two names being synonymous].

Before SMALLEY, District Judge.

This is an action brought [by Henry Hallett and others against Henry A. Smythe] to recover a sum of $913 alleged to have been illegally imposed on an importation of gambia made by the plaintiffs on the bark Fritz & Anton, May, 1866. The importation, gambia, is a designation synonymous with terra japonica in the books. It is a later word than terra japonica, which it appears, however, to have supplanted in commercial phrase, while on the other hand it appears to have been ignored in the tariff, terra japonica only being referred to. The importation in question under the latter designation is exempt from duty, and therefore the imposition of a tax of ten per cent. ad valorem thereon, which was exacted, was paid by the plaintiffs under protest and an appeal made to the secretary of the treasury. The assumed justification for the exaction, and the defence therefore, is based on a decision of the secretary of the treasury, set forth in a circular letter, dated May, 1864, with regard to the proper rate of duty to be assessed on the article known in commerce as gambia. The circular, which is over the signature of the present Chief Justice Chase, states that the article is nowhere designated in any of the tariff acts by name. but has been included under the general term of "terra japonica," a variety of the catechu or cutch. This latter article is lia-

ble under the provisions of the fifth section of the act of July, 1862 [12 Stat. 546], to an ad valorem duty of ten per cent: and the act was applied under the circular of Secretary Chase, referred to, to the plaintiff's importation of gambia or terra japonica, and it was against this application of the fifth section of the tariff act, and to recover the amount exacted under its operations, the action was brought.

Mr. A. R. Culver, for plaintiff, opened the case, and submitted briefly to the court the law bearing on the issue. The act of March, 1861, provides that terra japonica, catechu or cutch shall be admitted to entry free of duty. The act of July, 1862, provides, that cutch or catechu shall pay a duty of ten per cent. ad valorem, and makes no allusion whatever to the other article, terra japonica, which, therefore, counsel contended, still stands, under the act of 1861, free of duty. Mr. Culver examined a number of witnesses, either at present engaged or lately engaged in importing and dealing in the article gambia or terra japonica, and catechu, or cutch, who clearly proved that in commerce, gambia, or terra japonica, was known as an entirely different and distinct article of trade from cutch or catechu, though to a considerable extent assimilating in their properties and the uses to which they can be applied. The articles, however, are different in origin, being imported from different countries of the East, and sold in the markets here and in England at about one-half the price, gambia being the cheaper article.

Mr. Courtney, U. S. Dist. Atty., called but one witness for the defence, when Judge Smalley said that if there was nothing but cumulative evidence as to what gambia was, and whether it should come under the designation of cutch or catechu, or under that of terra japonica, taking such testimony would be a waste of time. It was clear from the evidence that gambia and terra japonica were synonymous, and that congress, when exempting terra japonica from duty, meant gambia.

THE COURT ordered the jury to return a verdict for the plaintiff in the full amount claimed. Verdict accordingly.

---

HALLETT (TOY WILLIAM v.). See Case No. 14,123.

---

## Case No. 5,960.

### In re HALLIE et al.

### [7 Ben. 182.] [1]

District Court, S. D. New York. March, 1874.

TAKING PAPERS FROM FILES.

At the first meeting of creditors of a bankrupt, objection was made to certain proofs of debt

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

which had been filed by three creditors. The register ruled that the proofs were insufficient, and that the creditors could not vote. The counsel for the creditors asked leave to amend the proofs of debt, which was granted. The three creditors afterwards claimed the right to withdraw the proofs of debt from the register's office. *Held*, that the proofs could not be so withdrawn.

[In bankruptcy. In the matter of Abraham Hallie and Bernard Brunner.]

The register certified to the court, in this case, that, before the first meeting of creditors, proofs of debt were filed on behalf of three creditors; that the creditors were put on the list; that, at the first meeting, these creditors were called to vote, when objection was made by other parties; that the register ruled, that the proofs were insufficient; that counsel for the creditors asked leave to amend the proofs of debt, which was granted, but they did not avail themselves of such leave granted; that proceedings were thereafter taken to expunge the claims, whereupon the creditors sought to withdraw the proofs of debt from the register's office—and the register certified the following question: "The proofs of debt having been sworn to, filed, and afterwards, upon objection made to them at the first meeting of creditors, postponed by the register under the 23d section [of the bankrupt act of 1867 (14 Stat. 528)], have the creditors a right to withdraw them, thereupon, from the register's office, upon their mere demand?

BLATCHFORD, District Judge. The question certified is answered in the negative.

---

## Case No. 5,961.

### The HALLIE JACKSON.

### [Blatchf. Pr. Cas. 41.] [1]

District Court, S. D. New York. Aug., 1861.

ADMIRALTY — FLAG WORN DETERMINES CHARACTER OF VESSEL—BLOCKADE—WHAT CONSTITUTES VIOLATION OF.

1. A vessel is clothed with the character of the flag she wears.

2. Vessel condemned as enemy property, and for an attempt to violate the blockade.

3. A vessel approaching a blockaded port, with intent to violate the blockade, is not entitled to be warned off.

4. Cargo condemned as enemy property. It was also shipped for an enemy port, with intent to violate the blockade.

[Cited in The Amy Warwick, Case No. 341.]

In admiralty.

BETTS, District Judge. The brig Hallie Jackson, her tackle, &c., and the cargo laden on board, were captured on the 10th day of June, 1861, on the high seas, off the coast of Georgia, near Tybee light, by the United States steamship Union, under the command of J. R. Goldsborough, and have been libelled

[1] [Reported by Samuel Blatchford, Esq.]